U.S. BANKRUPTCY COURT
                          SOUTHERN DISTRICT OF FLORIDA
                          WEST PALM BEACH, FL


                          CASE NO. 22-bk-14766

                          JUDGE SCOTT MAX GROSSMAN

In RE: Ralph L. Sanders,    )
                            )
            Debtor.         )
                            )
---------------------------

                          United States Bankruptcy Court
                          Southern District of Florida
                          Flagler Waterview Building
                          1515 North Flagler Drive, #801
                          West Palm Beach, FL  33401

                          Thursday, December 8, 2022

     WHEREUPON, the proceedings in the above-

entitled cause came on for hearing before the

Honorable **SCOTT MAX GROSSMAN**, Presiding Judge.


APPEARANCES:                MICHAEL J. BROOKS, ESQ.
                            Appearing on behalf of the
                            Debtor

                            PETER KELLY, ESQ.
                            Appearing on behalf of
                            Specialized Loan Servicing

                            JOANNA TEMPONE, ESQ.
                            Appearing on behalf of
                            Robin Weiner, Chapter 13
                            Trustee


Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

  Acorn Transcripts, LLC  1-941-426-4465  www.acornfla.com

1-2

I N D E X

PAGE:

ATTORNEY BROOKS'S EMERGENCY MOTION
 TO WITHDRAW -  GRANTED                          21


THIRD AMENDED PLAN CONFIRMED                     23

ATTORNEY KELLY'S MOTION FOR
 RELIEF FROM STAY - GRANTED                      25

1-3

1    WHEREUPON:

2         The proceedings commenced as follows:

3         MS. TEMPONE:  Finally, Your Honor, we

4    have Ralph Levi Sanders, Jr. 22-14766.

5         THE COURT:  Okay.  Sanders.  Let me take

6    appearances first.  Mr. Brooks?

7         MR. BROOKS:  Michael Brooks for the

8    debtor.

9         THE COURT:  Okay.

10         MR. BROOKS:  Mr. Sanders is also on the

11    phone.

12         THE COURT:  Yes.  Mr. Sanders, you're

13    opposing his motion to withdraw, so go ahead and

14    state your appearance, sir.

15         You're on mute.  Go ahead and unmute

16    yourself.

17         The icon is showing you with a muted

18    telephone connection for what that's -- there you

19    go.  Good.

20         MR. SANDERS:  Okay.  I was

21    (indiscernible) my phone because the computer

22    freezes up every so often.

23         THE COURT:  All right.  State your name,

24    sir.

25         MR. SANDERS:  Ralph Levi Sanders Jr.

1          THE COURT:  Okay.  Other appearances.

2     Mr. Kelly?

3          MR. KELLY:  Yes.  Good afternoon, Your

4     Honor.  Peter Kelly, K-E-L-L-Y, appearing on

5     behalf of Specialized Loan Servicing.

6          THE COURT:  Okay.  Ms. Tempone?

7          MS. TEMPONE:  Joanna Tempone on behalf

8     of Robin Weiner, the Chapter 13 Trustee.

9          THE COURT:  Okay.  Other appearances?

10    Any other appearances in Sanders?

11       (No audible response)

12         THE COURT:  All right.  Mr. Sanders, go

13    ahead and mute.  Please mute yourself again.

14    There's some -- I don't know, I see a fan on your

15    video.  I don't know if that's causing the noise,

16    but there's a loud noise.  But if you just mute

17    yourself, and then I'll call on you when I need

18    you to speak.

19         All right.  So, Ms. Tempone, there are a

20    number of matters on the docket, but what's set

21    for today, I believe, is the emergency motion to

22    withdraw, and I think that's the only thing set.

23    Mr. Brooks's fee application is not set and the

24    pending stay relief motion is not yet set.

25         So tell me where things stand from your

1-5

1  perspective, Ms. Tempone, then I'll hear Mr.

2  Brooks's motion to withdraw.

3          MS. TEMPONE:  Your Honor, I believe I

4  have -- oh, has the amended -- the application

5  been reset for hearing?  I'm sorry.

6          THE COURT:  I don't -- it's filed, but I

7  don't see --

8          MS. TEMPONE:  Well, we had reached out

9  to -- just so Your Honor is aware.

10          THE COURT:  Yes.

11          MS. TEMPONE:  We reached out to Mr.

12  Brooks because it was a -- it appeared to be a

13  calculation error that he had.  It was --

14          MR. BROOKS:  A typo.

15          MS. TEMPONE:  -- a typographical error

16  that he amended the fee application just to reduce

17  the amount.

18          THE COURT:  Oh, okay.  Oh, okay.  And I

19  do see at 63 there was a notice of hearing on the

20  original fee application.  Okay.  So we have that

21  as well as the motion to withdraw, correct?

22          MS. TEMPONE:  Yes.  And just so Your

23  Honor is aware, which I'm sure you already are,

24  there is a motion for relief from stay.  It was

25  filed by negative notice by Mr. Kelly's client,

1-6

1    probably because the property was treated as

2    direct under the third amended plan.  However,

3    because of Mr. Sanders's responses in filings that

4    he doesn't agree to that, he no longer -- or he

5    never did agree to that treatment, there hasn't

6    been an order entered and that's why Mr. Kelly is

7    here today.

8              But for purposes -- if we can address, I

9    guess, confirmation quickly, Your Honor, because

10   at this time we probably don't have a resolution.

11   The third amended plan as filed would have been

12   recommended for confirmation if Mr. Brooks

13   prevailed on his application for compensation.

14             But the property -- the debtor's

15   homestead is treated as direct under that proposed

16   plan, and Mr. Sanders, in correspondence and by

17   his filings, has made it known that he does not

18   agree with that treatment at this time.  So we

19   cannot -- the debtor is current under that third

20   amended plan, but at this time, we cannot

21   recommend confirmation as there appears to be a

22   conflict.

23             THE COURT:  Okay.  All right.

24             Mr. Brooks.

25             MR. BROOKS:  Your Honor, this is a

1-7

1     really complicated case.  That has nothing to do

2     with the bankruptcy court, but it's a very

3     complicated case.

4          Mr. Sanders bought this -- bought this

5     property, and apparently he bought a property that

6     had 20,000 square feet.  It turns out that when

7     the original survey was done, which I saw, that

8     Mr. Sanders got to me though microfiche, it's

9     unledgible and -- but it does look like all the

10    other surveys that were done, that we can't tell

11    what part of the property that Mr. Sanders owns.

12         He has numerous setback violations from

13    the City of Plantation.  I don't even know how

14    much money is owed on those -- on those

15    violations.  That wasn't listed in the original

16    schedules.  I did not file this plan.  It was an

17    MMM plan that had no chance of becoming -- or an

18    agreement coming to fruition.

19         The debtor is behind almost $300,000.

20    He has a hole in his roof, so he can't even get

21    insurance for the roof for windstorm.  He needs

22    flood insurance.  It's been force placed for

23    years.

24         But the issues that he has -- he has

25    title insurance, and the title insurance company

1-8

1   who also relied on the survey -- the survey, by

2   the way, says it relied on the prior survey when

3   preparing the present survey for his purchase.  So

4   everybody relied on the prior surveys.  All of the

5   surveys that were done since 1966 relied on the

6   prior surveys.  So -- which made this incredibly

7   complicated and every buyer signed a warranty

8   deed, so they're involved in this as well.

9        I've spoken with Mr. Kelly.  We all

10  agree that -- and this can't be an adversary in

11  bankruptcy court because bankruptcy court doesn't

12  deal with title issues, and the title insurance

13  company has reached out to Mr. Sanders and asked

14  him why he thinks that he only has 14,000 square

15  feet instead of 20,000 square feet, or 12,000

16  instead of 20.

17        His response was not -- it didn't really

18  respond to the letter from the -- or the email

19  from the title insurance company.  But I think

20  that if the bank, who needs to bring in the title

21  insurance company does, Mr. Sanders can piggyback

22  on that lawyer who's going to represent the title

23  insurance company because -- in state court,

24  because it's the same issue and they both are

25  insured.

1-9

 1          So like I said to Mr. Sanders, an MMM

 2    was never going to work.  He's on a fixed income,

 3    $300,000 in arrears, plus a $600,000 payoff.  It's

 4    just -- it's just too much money and was never

 5    going to happen.

 6          The only way this plan can be confirmed

 7    is to take that house out.  And the only benefit

 8    that Mr. Sanders can get is if the title insurance

 9    company appoints a lawyer to represent him in the

10    state court action because the -- our book and

11    page does not -- it encompasses more property than

12    the debtor has, maybe.

13          So it took me forever to figure this

14    out.  So Mr. Sanders has emailed me no fewer than

15    100 times on these issues that I told him are not

16    bankruptcy issues.  There's nothing I can do with

17    an MMM or a cure.  He can't afford it.  No one is

18    going to do an MMM with a hole in the roof.

19    You've got to have your own -- your own wind

20    storm, and he can't get wind storm with a hole in

21    his roof.

22          So an MMM is not going to work, and it

23    wouldn't matter anyway.  There's so many title

24    issues on this.  And more than title issues, he's

25    got -- he's got violations.  He's got a pool that

1-10

1    is encroaching on the setbacks.  He's got --

2    everything with this house is wrong.  The whole

3    house -- the whole neighborhood has to be

4    demolished.  So I mean, this is -- from the

5    original plat, they did it wrong.  I don't know

6    how they got it through, but the whole thing is

7    wrong and it's really, really complicated.

8         And the only thing that can be done is

9    going into state court, getting the title

10   insurance company to have a lawyer for Mr.

11   Sanders.  He can piggyback on the -- on the bank's

12   title insurance lawyer.  They're going to

13   represent both.  The mortgage has to be paid.  The

14   house has to be destroyed.  Mr. Sanders, I don't

15   know if his damages are his initial purchase price

16   or the present value of the house, or what it

17   would be if there was no hole in the roof.  I

18   don't know.  I don't know -- I have no idea how

19   the resolution of this in state court is going to

20   work.

21        The only thing I know is that on his

22   schedules he had $33,000 of assets.  He had 24,000

23   in the bank and 9,000 of other assets that were

24   listed when the case was filed.  Not by me.  I --

25   the only thing I did was amend Schedule B to add

1    the $24,000 bank account, which was not listed.

2         So I -- all his unsecured creditors

3    totaled about $6,400.  So I made this 100 percent

4    plan, I took the amount of money that he paid in,

5    and obviously we can't skip months so those were

6    paid the first 2 months.  That's when I got

7    involved.  And then it's a $400 payment from month

8    3 to 60, and there is nothing else that can be

9    done in this case.

10        He cannot convert to a Chapter 7 because

11   he has -- even if he spent this $24,000, he's

12   going to have issues with the Chapter 7 trustee

13   with the other 9, and I mean, some of the things

14   on there are valued way too high.  Like he has

15   Disney paraphernalia that he listed a value of

16   $1,500 for, and obviously that's not worth $1,500.

17   But I mean, there's nothing I can do about that

18   now.  And the $24,000 being spent in over 6 months

19   is unlikely, because he hasn't spent any  money on

20   a mortgage or really anything else.  I don't know

21   what happened with that money and he's going to

22   have issues with the Chapter 7 trustee.

23        So I would not recommend that he convert

24   to a Chapter 7.  My recommendation is if he wants

25   to continue with this bankruptcy, continue with

1-12

1    the 100 percent plan or dismiss it.  I mean, there

2    have been two other cases, and when I got -- when

3    I got involved in this case, the trustee's

4    recommendation was dismiss this case.  I said,

5    I'll fix everything, and I fixed everything in a

6    weekend once I figured out that these aren't

7    bankruptcy issues.

8              So I'm dealing with the unsecured

9    creditors that have filed claims and the bar date

10   is passed, and LS -- LS70 what?

11             UNIDENTIFIED SPEAKER:  72.

12             MR. BROOKS:  LS72 is filed, that we

13   reviewed the claims, everything was done, and

14   that's all I can do.

15             THE COURT:  Okay.  And I appreciate all

16   you've done.  I appreciate that update.  I

17   appreciate the time you took to digest what sounds

18   like an incredibly complicated title problem.

19             So now onto the merits of your motion to

20   withdraw, which I read and I recognize there's

21   only so much you can tell me on -- you know, on

22   the record without betraying your client's

23   confidences, but given what you've just said, tell

24   me why you want to withdraw.

25             MR. BROOKS:  Well, I have told Mr.

1-13

1  Sanders everything that I have told you.  He is
2  threatening to file a bar complaint against me for
3  whatever reason, I don't know.  He doesn't believe
4  anything I'm saying.  He won't take my advice.
5  He's -- I've asked him no -- to not email me
6  anymore.  I've probably gotten 20 emails since
7  then.  I've gotten two since we've been on the --
8  on today's -- at today's hearing this afternoon.
9           I'm done.  I'm just done.
10          THE COURT:  Okay.  All right.
11          MR. BROOKS:  I mean, his plan is
12  confirmable.  He can either take it or leave it.
13          THE COURT:  Okay.  All right.  Ms.
14  Tempone, I'll hear from Mr. Sanders, but do you
15  have any position on the motion to withdraw?
16          MS. TEMPONE:  No, Your Honor, but should
17  -- are you going to consider the amended fee
18  application?
19          THE COURT:  Do you have any position on
20  the amended fee applications?
21          MS. TEMPONE:  The only --
22          THE COURT:  Or if I deny confirmation
23  then, is it moot or do I rule on that anyway?
24          MS. TEMPONE:  Oh, it would be moot if
25  confirmation --

1-14

1            MR. BROOKS:  It would be moot.

2            MS. TEMPONE:  -- unless Mr. Brooks --

3            MR. BROOKS:  We're vested.

4            MS. TEMPONE:  -- requests to go forward.

5     He would -- despite the -- you wouldn't receive --

6     well, if Mr. Brooks want -- was trying to receive

7     all of his fees, he would need to go forward on

8     this motion, otherwise he would only receive under

9     Safe Harbor, the prorated amount.  I'm sorry, Your

10    Honor.  There's a local rule that -- what's --

11    1500?  If he doesn't --

12           MR. BROOKS:  4,500.

13           MS. TEMPONE:  If he --

14           MR. BROOKS:  My fee, 3,000.  Oh, no, no,

15    no.  I got 2,000 up front, so I'd get 2,500.

16           MS. TEMPONE:  It would be a portion of

17    the Safe Harbor that he would receive if the case

18    was dismissed prior to confirmation, Your Honor.

19    So if he went forward on the application for

20    compensation, it could potentially be more of a

21    prorated distribution.

22           THE COURT:  Okay.  All right.  So do you

23    have any objection to the application for

24    compensation as amended?

25           MS. TEMPONE:  Your Honor, we just would

1    like to make the Court aware that Mr. Sanders's

2    prior Chapter 13 attorney received $4,640 paid in

3    full, and per the -- per the order entered at ECF

4    30, the debtor's ore tenus request for a refund of

5    those fees was denied, so we have a Chapter 13

6    case that we're well above the debtor paying Safe

7    Harbor fees.  We're just making the Court aware

8    and we'll defer to the Court.

9          I understand Mr. Brooks has done a lot

10   of work in the case.  He's only been the -- he

11   only appeared in the case about a month ago in

12   November, but he has articulated that he has done

13   quite a bit of work, and he attached a retainer

14   agreement showing that the debtor was agreeing to

15   these fees, so we would defer to the Court with

16   regards to Mr. Brooks's compensation request.

17               THE COURT:  Okay.  And then what about

18   his request to withdraw?

19               MS. TEMPONE:  Your Honor, we would defer

20   to the Court, Your Honor.

21               THE COURT:  Okay.  All right.  Mr. Kelly,

22   do you wish to be heard on the -- Mr. Brooks's

23   motion to withdraw or his fee application?

24               MR. KELLY:  We have no opposition to

25   either, Your Honor, with respect to the mortgage

1-16

1    company.

2              THE COURT:  All right.  And then what

3    about all of the confirmation deficiencies

4    outlined by Ms. Tempone?  What's your position?

5              MR. KELLY:  So, at least with respect to

6    the lender, this plan, the latest iteration

7    provides for us to be treated outside, which we

8    believe is appropriate in line with many of the

9    reasons that Attorney Brooks stated, and so we

10   would not have an issue with the plan confirming,

11   because it would allow everything to essentially

12   move forward again in state court.

13              I do want to take just a brief moment to

14   correct something I stated on the record during

15   the trustee's portion of the calendar, because I

16   thought that the stay relief motion was set for

17   hearing, so I made some statements to that effect

18   and I apologize.  I was incorrect about that.

19              There had been responses filed to the

20   motion, but even though it's not before Your

21   Honor, I would join in some of the comments from

22   the debtor's present counsel in that that does

23   appear to be appropriate, to the extent there are

24   these massive title issues, and I'm not as

25   informed about the substance of them, but those

1   would appear to be state court issues for the

2   parties to deal with, either in that foreclosure

3   proceeding or elsewhere, but I don't see a

4   mechanism before Your Honor to deal with that, and

5   especially so when there's no payments being made

6   towards this lender.

7           I'm going a little bit farther than Your

8   Honor's question and back to -- coming back to the

9   plan.  We're treated outside, so we don't really

10  have a substantive opposition to confirmation, but

11  there seems to be more swirling around than just

12  that issue.

13          MR. BROOKS:  And the only -- the only

14  issue holding up confirmation is the fee app.

15          THE COURT:  That's it.  Ms. Tempone,

16  there's no other problems with confirmation?

17  Other -- well, other than that I guess it's stated

18  Mr. Sanders doesn't want --

19          MR. BROOKS:  Right.

20          THE COURT:  -- potentially doesn't want

21  to go forward with confirmation, right?

22          MS. TEMPONE:  Yes, Your Honor, and

23  that's a big reason for us.

24          THE COURT:  All right.  So all right.

25          Mr. Sanders, go ahead and unmute

1-18

1    yourself.

2           MR. SANDERS:  Okay.  Sorry, Your Honor.

3           THE COURT:  Yes.

4           MR. SANDERS:  Sorry.  I've been working

5    on this for the past couple years.  To start with,

6    my bankruptcy case 19-24331 but I notice the land

7    in back of the house and my neighbors' homes all

8    started to disappear.  The issue with my house

9    became quite obvious.

10          I'm willing to bow to whatever the Court

11   decides is the best interest to myself, but also

12   to my neighbors.

13          Now, Mr. Kelly, you have some -- your

14   clients, a lot of the mortgages in my neighborhood

15   are -- have the same issue.  People can't even

16   sell their homes because of the land issue.

17          I'm sorry.  I'm getting a slight bit

18   distracted here

19          THE COURT:  Right.  So hold on.  Hold

20   on, Mr. Sanders.

21          MR. SANDERS:  Well, that would be --

22          THE COURT:  Hold on, Mr. Sanders, all

23   right?  Let's focus on the issues before me today,

24   and I know we've had other hearings and you've

25   filed some papers, and I think Mr. Brooks really

1    did a very nice job of summarizing a very complex

2    title dispute, okay?

3           So but what's before me today is a

4    Chapter 13 plan was filed on your behalf, that but

5    for considering Mr. Brooks's fees, I believe there

6    is no objection to it being confirmed, other than

7    the representation by Mr. Brooks in his motion to

8    withdraw, that you do not want the plan to be

9    confirmed.

10          So do you or do you not wish to proceed

11   with confirmation of your plan?

12          MR. SANDERS:  Your Honor, I'm hearing

13   here, also from Mr. Kelly, is that the insurance

14   -- I'm scared they're going -- trying to find a

15   place to live right after this, once I saw the

16   relief from stay.

17          I've had -- okay.  Confirmation of plan,

18   Mr. Kelly comes in, I go with Mr. Brooks, I defer

19   to him.  I apologize.

20          What they're looking at is 800 a month

21   plus whatever additional monies per month, and I'm

22   getting hit with -- I spent about $12,000 in

23   lawyer's fees, other's fees, so far this year just

24   on this area.  Hired title insurance attorneys,

25   law firms.  I paid Charles Knox (ph) 3,000 to

1-20

1    investigate the issue.  They determined that's --
2    there is validity and that the City of Plantation
3    has to be involved -- brought in as one of the
4    defendants.  So I've had South Water Management
5    come in and say the area is a mess because the
6    setback.  The city has 20 feet, South Water
7    Management has 40 feet.
8              THE COURT:  Okay.  All right.
9              MR. SANDERS:  The buildings are --
10             THE COURT:  Mr. Sanders.  Mr. Sanders, I
11   need to --
12             MR. SANDERS:  Okay.  Sorry.
13             THE COURT:  -- I need -- hold on.  I
14   need to stop you again.
15             And look, ultimately if you -- well,
16   Mr. Brooks wants to withdraw if -- so I want to
17   know if you oppose that and I want to know if you
18   want to pursue confirmation of your plan.  Now --
19        (Off the record from 4:04:10 to 4:09:10)
20             MR. SANDERS:  Mr. Brooks, I wish you
21   didn't do it.  I don't know what -- as far as on
22   the legal side, there's no way I know everything
23   that's out there.  I mean, for this case, some of
24   the areas the way you describe it, I'm more of a
25   detailed person.  You say like, this attorney,

1-21

1    what attorney, what did he do?  I don't know those

2    things.  I've already been burned a few times

3    already and I'm just scared.

4         Mr. Brooks, I wish that you would stay

5    and I got the referral to you from Louis.  So I

6    was originally working with Attorney Louis, and he

7    directed me to you for work.  So I have no issues

8    with Louis.  Just when Louis became unavailable

9    because he was the key plan for when -- once you

10   get from (indiscernible) a plan, I needed an

11   attorney out in the non-federal, in the state

12   courts.  Louis was supposed to be that place.

13        THE COURT:  Okay.  All right.

14        MR. SANDERS:  He had --

15        THE COURT:  All right.  All right, Mr.

16   Sanders, let me stop you.

17        MR. SANDERS:  Okay.

18        THE COURT:  All right?  I gave you the

19   opportunity.  I haven't heard any valid legal

20   basis that is sufficient to defeat Mr. Brooks's

21   motion.

22        So, Mr. Brooks, I will grant your motion

23   to withdraw.  You may submit an order on that.

24   Please again, as with Mr. Rossoletti, take a look

25   at that order, include just for everybody's

1-22

1  benefit, Mr. Sanders's last known address for

2  service, and if Ms. Tempone, Mr. Kelly don't have

3  it, his email address and phone number.  Please

4  email that to them.  Don't put it in the order.

5  So just put his physical address in the order, any

6  dates and deadlines he needs to be aware of.

7  Okay?  So that took care of those two.

8         Now on confirmation, it sounds like

9  Mr. Sanders does want his plan to be confirmed.

10 So, Ms. Tempone, with that statement, it sounds

11 like the plan is confirmable, correct?

12         MS. TEMPONE:  Your Honor, the plan --

13 the third amended plan filed at ECF60, it pays 100

14 percent to the general unsecured creditors, which

15 is $6,402.40, and it also pays Mr. Brooks's

16 outstanding fees of $5,000.  So it just -- I'm

17 just --

18         MR. BROOKS:  That's it.

19         MS. TEMPONE:  -- stating it for the

20 record and Mr. Sanders that his payments, months 1

21 through 4 of the plan, were $1,470.81, and months

22 5 through 60 of the plan, the monthly ongoing

23 payments, are $400.57.  At this time, Your Honor,

24 the plan appears to be confirmable, and if Mr.

25 Sanders is agreeing with the terms of the plan, we

1-23

1      can recommend confirmation.

2                THE COURT:  All right.

3                Mr. Sanders again, last time, last chance.

4      You agree to go forward with confirmation?

5                MR. SANDERS:  Yes, Your Honor.

6                THE COURT:  Okay.  Any objections to

7      confirmation?  Hearing none, I will confirm the

8      third amended plan.

9                Ms. Tempone, you'll submit an appropriate

10     order on that.

11               MS. TEMPONE:  Yes.  Yes, Your Honor.

12     It's a request to confirm that we -- it's a docket

13     entry that's filed to request for Confirmation, and

14     then an order will be subsequently entered after

15     that.

16               THE COURT:  Okay.  Very good.  And then

17     the last thing is, there is pending a motion for

18     stay relief, which I had not set for a hearing yet,

19     pending resolution of the withdrawal of counsel

20     issue.

21               Mr. Sanders, I can hear the motion for

22     stay relief -- and Mr. Sanders and Mr. Kelly, next

23     week.  Or if you want -- if there's a resolution to

24     be agreed to now and nobody objects, I will

25     entertain it now.  Otherwise, I think I would set

1-24

1  it for a hearing next week.

2           MR. BROOKS:  Judge, there is a resolution.

3           THE COURT:  There is.  All right.  Mr.

4  Brooks?

5           MR. BROOKS:  The Confirmation order grants

6  all secured creditors relief from stay, and any

7  kind of motion for relief from stay would be a

8  comfort order.

9           THE COURT:  Okay.

10           MR. BROOKS:  So if you want to grant a

11  comfort order, I don't think there can be an

12  objection to that.  I think that it's in Mr.

13  Sanders's benefit to allow this to go to state

14  court so that the state court attorney can get the

15  title insurance attorney to get in there and Mr.

16  Sanders can ride the back of that -- of that title

17  insurance attorney.

18           THE COURT:  Okay.  That's very helpful,

19  Mr. Kelly.

20           Any objection to submitting an order

21  granting your motion for stay relief?

22           MR. KELLY:  No objection, Your Honor.

23           THE COURT:  All right.

24           Ms. Tempone?

25           MS. TEMPONE:  No, Your Honor, no

1-25

1    objection.

2              THE COURT:  All right.

3              And, Mr. Sanders, any objection?

4              MR. SANDERS:  No, Your Honor.

5              THE COURT:  Okay.

6              MR. SANDERS:  Mr. Kelly, do you

7    (indiscernible) that the homes in the area were

8    built without permission of the Broward County

9    Commission.

10             THE COURT:  Okay.  Mr. Sanders, you --

11             MR. SANDERS:  Okay.

12             THE COURT:  -- have to stop.  That's not

13   for this --

14             MR. SANDERS:  I'm sorry.

15             THE COURT:  -- court.  Okay?

16             All right.  So, Mr. Kelly, you can give

17   me --

18             MR. SANDERS:  Sorry.

19             THE COURT:  -- you can give me an order

20   on your motion for stay relief granting it.  Okay?

21             MR. KELLY:  Okay.  And we'll reference

22   today's hearing.

23             THE COURT:  Yes, please.  Okay.

24             MR. KELLY:  In that order.  Thank you.

25             THE COURT:  All right.  So I think

1-26

1    that's everything in this case.

2            Mr. Sanders, I wish you luck.  This

3    sounds like a very complicated issue.  I'm sorry

4    I'm not the right court to resolve it.  I wish you

5    luck in trying to resolve it in the state courts.

6            And, Mr. Brooks, I frankly can't thank

7    you enough for jumping in here and trying your

8    best to help Mr. Sanders and sort out this really

9    unfortunate mess, and so I thank you for your

10   contribution here.

11           And, Mr. Sanders, I hope you find

12   counsel to help you in the state court and you can

13   proceed forward.  Okay? So that concludes the

14   Sanders hearing.

15           Ms. Tempone, anything else?

16           MS. TEMPONE:  That's it, Your Honor.

17           THE COURT:  All right.  Well, thank you.

18   Thank you all.  All right.

19           MR. BROOKS:  Thank you, Your Honor.

20           THE COURT:  All right.  Well --

21           MS. TEMPONE:  Thank you, Your Honor.

22   Happy holidays.

23           THE COURT:  Happy holidays to everybody.

24           Court is in recess.  Thank you.

25   (WHEREUPON, the hearing was concluded at 4:15 p.m.)

1-27

# C E R T I F I C A T I O N

I, Nancy B. Gardelli of Acorn Transcripts, LLC., hereby certify that the foregoing is a correct transcript, to the best of my ability from the official electronic sound recording of the proceedings in the above-entitled matter.

/s/ *Nancy B. Gardelli*          DATE:   January 27, 2023

Nancy B. Gardelli

Acorn Transcripts, LLC

3572 Acorn Street

North Port, FL  34286

My commission expires: 6/28/2023