UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF FLORIDA


|  |  |  |
|---|---|---|
| IN RE: | ) | Case No. 22-14766-SMG |
|  | ) | Chapter 13 |
| RALPH LEVI SANDERS, JR., | ) |  |
|  | ) | 299 East Broward Boulevard |
| Debtor. | ) | Fort Lauderdale, Florida |
|  | ) |  |
|  | ) | Thursday, December 8, 2022 |
|  | ) | 3:43 p.m. |
| _____ | ) |  |


TRANSCRIPT OF EMERGENCY MOTION TO WITHDRAW AS
ATTORNEY OF RECORD [71];
AMENDED FEE APPLICATION FOR COMPENSATION FOR
MICHAEL J. BROOKS, ESQ. [73]
BEFORE THE HONORABLE SCOTT M. GROSSMAN
UNITED STATES BANKRUPTCY COURT JUDGE


ZOOM APPEARANCES:


For the Debtor:          MICHAEL J. BROOKS, ESQ.
                         8660 West Flagler Street
                         Miami, FL 33144
                         (877) 290-9197

APPEARANCES CONTINUED.

Audio Operator:          Courtroom ECRO Personnel

Transcription Company:   Access Transcripts, LLC
                         10110 Youngwood Lane
                         Fishers, IN 46048
                         (855) 873-2223
                         www.accesstranscripts.com


     Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

```
ZOOM APPEARANCES (Continued):


For the Chapter 13          Robert R. Weiner, Chapter 13 Trustee
Trustee:                    By:  JOANNA TEMPONE, ESQ.
                            P.O. Box 559007
                            Ft. Lauderdale, FL 33355-9007
                            (954) 382-2001


For Specialized Loan        P. W. Kelly Associates, P.A.
Servicing LLC:              By:  PETER W. KELLY, ESQ.
                            P.O. Box 331083
                            Miami, FL 33233-1083
                            (786) 766-0012
```

1

1    FORT LAUDERDALE, FLORIDA, TUESDAY, DECEMBER 8, 2022, 3:43 P.M.

2                             --oOo--

3        (Call to order of the Court.)

4            MS. TEMPONE:  Finally, Your Honor, we have Ralph Levi

5    Sanders, Jr., 22-14766.

6            THE COURT:  Okay, Sanders.  Let me take appearances.

7    First, Mr. Brooks.

8            MR. BROOKS:  Michael Brooks for the debtor.

9            THE COURT:  Okay.

10            MR. BROOKS:  Mr. Sanders is also on the phone.

11            THE COURT:  Yes.  Mr. Sanders, you're opposing his

12    motion to withdraw, so go ahead and state your appearance, sir.

13    You're on mute.  Go ahead and unmute yourself.  The icon is

14    showing you with a muted telephone connection, for what that's

15    -- there you go.  Go ahead.

16            MR. SANDERS:  Okay.  I was (indiscernible) my phone

17    because the computer freezes up every so often.

18            THE COURT:  All right, state your name, sir.

19            MR. SANDERS:  Ralph Levi Sanders, Jr.

20            THE COURT:  Okay, other appearances.  Mr. Kelly?

21            MR. KELLY:  Yes.  Good afternoon, Your Honor.  Peter

22    Kelly, K-E-L-L-Y, appearing on behalf of Specialized Loan

23    Servicing.

24            THE COURT:  Okay, Ms. Tempone.

25            MS. TEMPONE:  Joanna Tempone on behalf of Robin

1  Weiner, the Chapter 13 Trustee.

2          THE COURT:  Okay.  Other appearances?  Any other

3  appearances in Sanders?

4          All right.  Mr. Sanders go ahead and mute -- please

5  mute yourself.  Again, there's some -- I don't know, I see a

6  fan on your video.  I don't know if that's causing the noise,

7  but there's a loud noise.  If you'd just mute yourself, and

8  then I'll call on you when I need you to speak.

9          All right.  So, Ms. Tempone, there are a number of

10 matters on the docket, but what's set for today, I believe, is

11 the emergency motion to withdraw.  And I think that's the only

12 thing set.  Mr. Brooks's fee application is not set, and the

13 pending state relief motion is not yet set.  So tell me where

14 things stand from your perspective, Ms. Tempone, and then I'll

15 hear Mr. Brooks's motion to withdraw.

16         MS. TEMPONE:  Your Honor, I believe I have  -- has

17 the amended fee application been reset for hearing?  I'm sorry.

18         THE COURT:  I don't -- it's filed, but I don't see.

19         MS. TEMPONE:  Well, we have reached out -- just so

20 Your Honor's aware, we reached out to Mr. Brooks because there

21 was a – there – it appeared to be a calculation error that he

22 had.  It was a –

23         THE COURT:  typo.

24         MS. TEMPONE:  -- typographical error that he amended

25 the fee application just to reduce the amount.

1        THE COURT:  Okay.  Oh, okay, and I do see it at 63.

2  There was a notice of hearing on the original fee application.

3  Okay.  So we have that, as well as the motion to withdraw,

4  correct?

5        MS. TEMPONE:  Yes.  And just so Your Honor's aware,

6  which I'm sure you already are, there is a motion for relief

7  from stay.  It was filed by negative notice by Mr. Kelly's

8  client, probably because the property was treated as direct

9  under the third amended plan.  However, because of Mr.

10 Sanders's responses and filings that he doesn't agree to that

11 -- he no longer -- or he never did agree to that treatment,

12 there hasn't been an order entered, and that's why Mr. Kelly's

13 here today.

14        But for purposes -- if we can address, I guess,

15 confirmation quickly, Your Honor, because at this time, we

16 probably don't have a resolution, the third amended plan, as

17 filed, would have been recommended for confirmation if

18 Mr. Brooks prevailed on his application for compensation.  But

19 the property, the debtor's homestead, is treated as direct

20 under that proposed plan, and Mr. Sanders, in correspondence

21 and by his filings, has made it known that he does not agree

22 with that treatment at this time.  So we cannot -- the debtor

23 is current under that third amended plan, but at this time, we

24 cannot recommend confirmation as there appears to be a

25 conflict.

1          THE COURT:  Okay.  All right.  Mr. Brooks.

2          MR. BROOKS:  Judge, it's a really complicated case.

3  That has nothing to do with the bankruptcy court, but it's a

4  very complicated case.  Mr. Sanders bought this -- brought --

5  bought this property, and apparently he bought a property that

6  that had 20,000 square feet.  It turns out that when the

7  original survey was done, which I saw, that Mr. Sanders got to

8  me through microfiche, it's unlegible and – but it does look

9  like all the other surveys that were done that we can't tell

10 what part of the property that Mr. Sanders owns.

11          He has numerous setback violations from the City of

12 Plantation.  I didn't even know how much money is owed on those

13 -- on those violations.  That wasn't listed in the original

14 schedules.  I did not file this plan.  It was an MMM plan that

15 had no chance of becoming -- or an agreement coming to

16 fruition.  The debtor is behind almost $300,000.  He has a hole

17 in his roof, so he can't even get insurance for the roof for

18 windstorm.  He needs flood insurance.  It's been forced place

19 for years.  But the issues that he has, a -- he has title

20 insurance, and a title insurance company who also relied on the

21 survey.  The survey, by the way, says it relied on the prior

22 survey when preparing the present survey for his purchase.

23          So everybody relied on the prior survey.  All the

24 surveys that were done since 1966 relied on the prior surveys.

25 So -- which made this incredibly complicated.  Every buyer

1   signed a warranty deed, so they're involved in this, as well.

2          I've spoken with Mr. Kelly.  We all agree that this

3   can't be an adversary in bankruptcy court because bankruptcy

4   court doesn't deal with title issues.  And the title insurance

5   company has reached out to Mr. Sanders and asked him why he

6   thinks that he only has 14,000 square feet instead of 20,000

7   square feet -- or 12,000 instead of 20-.  His response was not

8   - it didn't really respond to the letter from the -- or the

9   email from the title insurance company.  But I think that if

10  the bank, who needs to bring in the title insurance company,

11  does, Mr. Sanders can piggyback on that lawyer who's going to

12  represent the title insurance company because -- in state court

13  because it's the same issue, and they both are insured.

14          So like I said to Mr. Sanders, an MMM was never going

15  to work.  He's on a fixed income $300,000 in arrears plus a

16  $600,000 payoff.  It's just too much money and was never going

17  to happen.  The only way this plan can be confirmed is to take

18  that house out.  And the only benefit that Mr. Sanders can get

19  is if the title insurance company appoints a lawyer to

20  represent him in the state court action because the -- our book

21  and page does not -- encompasses more property than the debtor

22  has maybe.

23          So it took me forever to figure this out.  So

24  Mr. Sanders has emailed me no fewer than 100 times on these

25  issues that I told him are not bankruptcy issues.  There's

1   nothing I can do with a -- an MMM or a cure.  He can't afford

2   it.  No one's going to do an MMM with a hole in the roof.

3   You've got to have your own windstorm, and he can't get

4   windstorm because of the hole in his roof.  So an MMM is not

5   going to work, and it wouldn't matter anyway.  There's so many

6   title issues on this.

7            And more than title issues, he's got violations.

8   He's got a pool that is encroaching on the setbacks.  He's got

9   -- everything with this house is wrong.  The whole house -- the

10  whole neighborhood has to be demolished.

11           So, I mean, this is -- from the original plan, they

12  did it wrong.  I don't know how they got it through, but the

13  whole thing is wrong.  And it's really, really complicated.

14  And the only thing that can be done is going into state court,

15  getting the title insurance company to have a lawyer for

16  Mr. Sanders.  He can piggyback on the bank's title insurance

17  lawyer, who are going to represent both.  The mortgage has to

18  be paid.  The house has to be destroyed.  Mr. Sanders, I don't

19  know if his damages are his initial purchase price or the

20  present value of the house -- or what it would be if there was

21  no hole in the roof?  I don't know.  I don't know -- I have no

22  idea how the resolution of this in state court is going to

23  work.  The only thing I know is that, on his schedules, he had

24  $33,000 of assets, okay, 24,000 in the bank and 9,000 of other

25  assets that were listed when the case was filed, not by me.  I

1    -- the only thing I did was amend Schedule B to add to $24,000

2    bank account, which was not listed.

3              So I -- all his unsecured creditors total about

4    $6,400.  So I made this a 100-percent plan.  I took the amount

5    of money that he paid in.  And obviously, you can't skip

6    months, so those are paid the first two months.  That's when I

7    got involved.  And then, it's a $400 payment from month 3 to

8    60.  And there's nothing else that can be done in this case.

9    He cannot convert to a Chapter 7 because he has -- even if he

10   spent this $24,000, he's going to have issues with the Chapter

11   7 trustee with the other 9-.  And I mean, some of the things on

12   there are valued way too high, like he has Disney paraphernalia

13   that he listed a value of $1,500 for, and obviously, that's not

14   worth $1,500.  But, I mean, there's nothing I can do about that

15   now.

16             And the $24,000 being spent in over six months is

17   unlikely because he hasn't spent any money on a mortgage or

18   really anything else.  I don't know what happened with that

19   money.  And he's going to have issues with a Chapter 7 Trustee.

20             So I would not recommend that if he convert to

21   Chapter 7.  My recommendation is if he wants to continue with

22   this bankruptcy, continue with the 100-percent plan or dismiss

23   it.  I mean, there have been two other cases.  And when I got

24   involved in this case, the trustee's recommendation was dismiss

25   this case.  I said, I'll fix everything, and I fixed everything

1    in a weekend once I figured out that these aren't bankruptcy

2    issues.

3            So I'm dealing with the unsecured creditors that have

4    filed claims.  The bar date is past.  An LF-72 was filed that

5    we reviewed the claims.  Everything was done.  And that's all I

6    can do.

7            THE COURT:  Okay.  And I appreciate all you've done.

8    I appreciate that update.  I appreciate the time you took to

9    digest what sounds like an incredibly complicated title

10   problem.  So now on to the merits of your motion to withdraw,

11   which I read and I recognize there's only so much you can tell

12   me on, you know, on the record without betraying your client's

13   confidences.  But given what you've just said, tell me why you

14   want to withdraw.

15           MR. BROOKS:  Well, I have told Mr. Sanders everything

16   that I've told you.  He is threatening to file a bar complaint

17   against me, for whatever reason, I don't know.  He doesn't

18   believe anything I'm saying.  He won't take my advice.  He's --

19   I've asked him no -- to not email me anymore.  I've probably

20   gotten 20 emails since then.  I've gotten two since we've been

21   on the -- at today's hearing this afternoon.  I'm done.  I'm

22   just done.

23           THE COURT:  Okay.  All right.

24           MR. BROOKS:  I mean, his plan is confirmable.  He can

25   either take it or leave it.

```
 1              THE COURT:  Okay.  All right.
 2              Ms. Tempone, I'll hear from Mr. Sanders, but do you
 3   have any position on the motion to withdraw?
 4              MS. TEMPONE:  No, Your Honor.  But should -- are you
 5   going to consider the amended fee application?
 6              THE COURT:  Do you have any position on the amended
 7   fee application?
 8              MS. TEMPONE:  The only –
 9              THE COURT:  If I deny confirmation, then is it moot,
10   or do I rule on that anyway?
11              MS. TEMPONE:  It would be moot if –
12              THE COURT:  So it can be moot.
13              MS. TEMPONE:  -- unless Mr. --
14              THE COURT:  (Indiscernible)?
15              MS. TEMPONE:  Request to go forward.  He would --
16   despite the -- you wouldn't – well, if Mr. Burke was trying to
17   receive all of his fees, he would need to go forward on this
18   motion.  Otherwise, he would only receive under, Safe Harbor,
19   the prorated amount.  I'm sorry, Your Honor.  There's a local
20   rule that --
21              MR. BROOKS:  4500.  3,000.  Oh, no, no, I got 2000
22   upfront, so I'd get 2500.
23              MS. TEMPONE:  It would be a portion of the Safe
24   Harbor that he would receive if the case was dismissed prior to
25   confirmation, Your Honor.  So if he went forward on the
```

1  application for compensation, it could potentially be more of a

2  prorated distribution.

3          THE COURT:  Okay.  All right.  So do you have any

4  objection to the application for compensation as amended?

5          MS. TEMPONE:  Your Honor, we just would like to make

6  the court aware that Mr. Sanders's prior Chapter 13 attorney

7  received $4,650, paid in full, and per the order entered at ECF

8  30, the debtor's ore tenus request for a refund of those fees

9  was denied.  So we have Chapter 13 case that we're well above

10 the debtor paying Safe Harbor fees.  We're just making the

11 Court aware, and we'll defer to the Court.  I understand

12 Mr. Brooks has done a lot of work in the case.  He's only been

13 the -- he only appeared in the case about a month ago in

14 November, but he is articulating that he has done quite a bit

15 of work, and he attached a retainer agreement showing that the

16 debtor was agreeing to these fees.  So we would defer to the

17 Court with regards to Mr. Brooks's compensation request.

18         THE COURT:  And then, what about his request to

19 withdraw?

20         MS. TEMPONE:  Your -- we would defer that to the

21 Court, Your Honor.

22         THE COURT:  Okay.  All right.  Mr. Kelly, do you wish

23 to be heard on Mr. Brooks's motion to withdraw or his fee

24 application?

25         MR. KELLY:  We have no opposition to either, Your

1   Honor, with respect to the mortgage company.

2          THE COURT:  All right.  And then, what about all of

3   the confirmation deficiencies outlined by Ms. Tempone?  What's

4   your position?

5          MR. KELLY:  So at least with respect to the lender,

6   this plan, the latest iteration, provides for us to be treated

7   outside, which we believe is appropriate, in line with many of

8   the reasons that Attorney Brooks stated.  And so we would not

9   have an issue with the plan confirming because it would allow

10  everything to essentially move forward again in state court.

11          I do want to take just a brief moment to correct

12  something I stated on the record during the trustee's portion

13  of the calendar because I thought that the stay relief motion

14  was set for hearing.  So I made some statements to that effect,

15  and I apologize.  I was incorrect about that.  There had been

16  responses filed to the motion.  But even though it's not before

17  Your Honor, I would join in some of the comments from the

18  debtor's present counsel, in that that does appear to be

19  appropriate to the extent there are these massive title issues,

20  and I'm not as informed about the substance of them.  But those

21  would appear to be state court issues for the parties to deal

22  with, either in that foreclosure proceeding or elsewhere.  But

23  I don't see a mechanism before Your Honor to deal with that,

24  and especially so when there's no payments being made towards

25  this lender.

```
1              I'm going a little bit farther than Your Honor's
2    question, back to -- coming back to the plan.  We're treated
3    outside, so we don't really have a substantive opposition to
4    confirmation.  But there seems to be more swirling around than
5    just that issue.
6              MR. BROOKS:  And the only the only issue holding up
7    confirmation is the fee app.
8              THE COURT:  That's it.
9              Ms. Tempone, there's no other problems with
10   confirmation?  Well, other than that, I guess it's stated
11   Mr. Sanders doesn't want -- potentially doesn't want to go
12   forward with confirmation, right?
13             MS. TEMPONE:  Yes, Your Honor.  And that's a big
14   reason for --
15             THE COURT:  Okay.  All right.  So all right.
16   Mr. Sanders, go ahead and unmute yourself.
17             MR. SANDERS:  (Indiscernible).
18             THE COURT:  Yes.
19             MR. SANDERS:  Sorry.  I've been working on this for
20   the past couple years, starting with my bankruptcy case
21   19-24331 when I noticed the land back of the house, and my
22   neighbors' homes, all starting to disappear.  The issue with my
23   house became quite obvious.  I'm willing to bow to whatever the
24   Court decides is the best interest for myself, but also to my
25   neighbors.
```

1          Now, Mr. Kelly, you have some -- your clients, a lot

2    of the mortgages in my neighborhood are -- have the same issue.

3    People can't even sell their homes because of the land issue.

4    I'm sorry, I'm getting (indiscernible) distracted here.

5          THE COURT:  So hold on, hold on.  Hold on, hold on,

6    Mr. Sanders.  Hold on, Mr. Sanders, all right.  Let's focus on

7    the issues before me today.  And I know we've had other

8    hearings and you've filed some papers, and I think Mr. Brooks

9    really did a very nice job of summarizing a very complex title

10   dispute.  Okay.  So -- but what's before me today is a Chapter

11   13 plan was filed on your behalf that -- but for considering

12   Mr. Brooks's fees, I believe there is no objection to it being

13   confirmed other than the representation by Mr. Brooks in his

14   motion to withdraw that you do not want the plan to be

15   confirmed.  So do you or do you not wish to proceed with

16   confirmation of your plan?

17         MR. SANDERS:  Your Honor, I'm hearing here, also from

18   Mr. Kelly, is that the insurance -- I'm (indiscernible) trying

19   to find a place to live right after this, plus I saw

20   (indiscernible) relief from stay.  I've had -- okay.

21   Confirmation of plan, Mr. Kelly (indiscernible) Mr. Brooks.  I

22   defer to him, I apologize.  But they're looking at his 800 a

23   month plus whatever additional monies per month, and I'm

24   getting hit with it.  I spent about $12,000 in lawyers' fees,

25   other fees, so far this year, just on this area.  I hired title

```
 1  insurance attorneys, law firms.  I paid charge (indiscernible)

 2  3000 to investigate the issue.  They determined (indiscernible)

 3  and that the City of Plantation has to be involved -- brought

 4  in as one of the defendants.

 5            So I've had South Water Management come in and say

 6  the area's a mess because the setback.  The City has 20 feet,

 7  South Water Management has 40 feet (indiscernible) --

 8            THE COURT:  Okay.  All right.  Mr. Sanders,

 9  Mr. Sanders, I need to --

10            MR. SANDERS:  Okay, sorry.

11            THE COURT:  Hold on, I need to stop you again.  And,

12  look, ultimately, if you -- well, Mr. Brooks wants to withdraw.

13  If -- so I want to know if you oppose that, and I want to know

14  if you want to pursue confirmation of your plan.

15            Now, Mr. Brooks has articulated very well and

16  summarized a, you know, very complex title dispute.  At bottom,

17  what he is saying -- and I think he's right -- is that I, the

18  bankruptcy court, cannot address or resolve those issues.  That

19  must be done in the state court, okay?  And the plan you have

20  filed doesn't even deal with the lenders' secured claim to your

21  property.  It's -- you provide that it's dealt with outside the

22  plan, and the lender wants stay relief, which is customary when

23  it's going to be dealt with outside the plan, to go and deal

24  with that somewhere else.

25            So what's on the table now is do you want to proceed
```

1  forward with your Chapter 13 plan that deals with, what was it,

2  about $8,000 in unsecured claims?  Is that --

3          UNIDENTIFIED:  (Indiscernible) about 6,400.

4          THE COURT:  About $6400 in unsecured claims, or do

5  you want to let this case get dismissed and devote your time

6  and energy to resolving the title issues in a court with

7  appropriate jurisdiction to resolve those disputes, which is

8  not the bankruptcy court.

9          MR. SANDERS:  I go with the current plan with what

10 Mr. Brooks proposed because the title insurance, there's the

11 lenders title insurance, which the lender will get paid off

12 (indiscernible), and then there's the homeowner's title

13 insurance.  Between the two, so a minimum of 600,000, which

14 will pay my creditors between the two.

15         So I will defer to Mr. Brooks, but I want to be sure

16 so I don't get tossed out in the street.  Because I've started

17 with the apartment hunting, and I don't drive because of

18 physical -- because of certain issues.  I got doctor's

19 (indiscernible) next week, a neurologist.  In fact, I prefer to

20 go with the -- with Mr. Brooks if he can work out his payment

21 schedule (indiscernible) adjustment to my income already, like

22 in the negative.

23         I want something that will help myself and my

24 neighbors.  This house, my house would be the first one.  So I

25 -- the answer to your question, Judge -- Judge Grossman, is

1  that, yes, I go with the planner with Mr. Brooks, so I could

2  stay there.

3          And, Mr. Kelly, I've asked you, SLS, since October of

4  2001, once I got confirmation (indiscernible) from the

5  insurance company for my title I've expressed to you South

6  Water (indiscernible) SLS -- if there is, I need their help.

7  I've asked SLS almost on a bi-weekly basis on an email, I need

8  help, I don't understand title.  Trying to find title insurance

9  attorneys that'll be aggressive, it's been impossible unless I

10 go up to (audio interference) Florida or the west coast of

11 Florida.

12          THE COURT:  Okay.  All right.  Again, Mr. Sanders,

13 I'm going to stop you there.  Okay.  So let's go back.  Let's

14 go back now to the matters I have before me first.  Mr. Brooks

15 has filed an amended fee application.  Do you have any

16 objection to it?

17          MR. SANDERS:  If he can make it a monthly one, I mean

18 -- work on the figures with me please.  Because I know I'm

19 going to -- additional figures, and right now, I'm paranoid

20 that SLS will file (indiscernible) out of the house.

21          THE COURT:  Okay.  But --

22          MR. SANDERS:  And I need money for apartment.

23          THE COURT:  Okay.  Hang on.  He's asking me to

24 approve the amended final fee application with the amount of

25 the -- the terms on which it is paid is set forth in your plan.

1    So what I'm asking first is if you object to his amended final

2    fee application in the amount of $7,000.

3                MR. SANDERS:  I do not object to the amount of -- the

4    total amount.  I do not object to that.

5                THE COURT:  Okay.

6                MR. SANDERS:  The payment schedule is

7    (indiscernible).

8                THE COURT:  Okay, hold on.  Let me stop you there.

9    Okay.

10               All right.  Does anybody else object to Mr. Brooks's

11   amended final fee application?  Hearing no objections, I will

12   approve the amended final fee application.  Given Mr. Brooks's

13   articulation of the issues and my familiarity with this case, I

14   think the amended fee application is well-deserved,

15   well-earned, and I will approve that.  So order from

16   Mr. Brooks.

17               Okay.  Next, we have Mr. Brooks's motion to withdraw

18   as counsel.  Mr. Brooks, do you still wish to withdraw?

19               MR. BROOKS:  I do.

20               THE COURT:  Okay.  Mr. Sanders, Mr. Brooks wishes to

21   withdraw.  Anything else you want to tell me in opposition to

22   -- do you oppose his motion?

23               MR. SANDERS:  Mr. Brooks, I wish you didn't do it.  I

24   don't know what (indiscernible ) on the legal side, which

25   normally I know everything that's out there.  I mean, for this

1  case, some of the areas where you describe it, I -- I'm more of

2  a detail person.  You say like this attorney, what attorney,

3  what do they do, I don't know those things.  I've already been

4  burned a few times already, and I'm just scared.

5            Mr. Brooks, I wish that you would stay.  I got the

6  referral to you from Louis (phonetic).  So I was originally

7  working with Attorney Lewis, and he directed me to you for

8  work.  So I know Mr. Louis (indiscernible) became unavailable

9  because he was the key plan for (indiscernible)  Once we get

10 from (indiscernible) plan, I need an attorney out in the non-

11 federal, in the state courts.  (Indiscernible) supposed to be

12 (indiscernible).

13           THE COURT:  Okay.  All right.  All right.  Mr.

14 Sanders, let me stop you.

15           MR. SANDERS:  Okay.

16           THE COURT:  All right.  I gave you the opportunity.

17 I haven't heard any valid legal basis that is sufficient to

18 defeat Mr. Brooks's motion.

19           So, Mr. Brooks, I will grant your motion to withdraw.

20 You may submit an order on that.  Please again, as with

21 Mr. Rossoletti (phonetic), take a look at that order, include

22 just for everybody's benefit, Mr. Sanders's last known address

23 for service and Ms. Tempone, Mr. Kelly don't have it, his email

24 address and phone number.  Please email that to them.  Don't

25 put it in the order.  So just put his physical address in the

1   order, any dates and deadlines he needs to be aware of.  Okay.

2   So that took care of those two.

3          Now on confirmation, it sounds like Mr. Sanders does

4   want his plan to be confirmed.  So, Ms. Tempone, with that

5   statement, it sounds like the plan is confirmable.  Correct?

6          MS. TEMPONE:  Your Honor, the plan -- the third

7   amended plan filed at ECF 60, it pays 100 percent to the

8   general unsecured creditors, which is $6,402.40.  It also pays

9   Mr. Brooks's outstanding fees of $5,000.  So just --

10  (indiscernible) the record of Mr. Sanders that his payments

11  months 1 through 4 of the plan were $1,470.81, and months 5

12  through 60 of the plan, the monthly ongoing payments, are

13  $400.57.  At this time, Your Honor, the plan appears to be

14  confirmable.  And if Mr. Sanders is agreeing with the terms of

15  the plan, we can recommend confirmation.

16         THE COURT:  All right.  Mr. Sanders, again, last

17  time, last chance.  Do you agree to go forward with

18  confirmation?

19         MR. SANDERS:  Yes, Your Honor.

20         THE COURT:  Okay.  Any objections to confirmation?

21  Hearing none, I will confirm the third amended plan.

22  Ms. Tempone, you'll submit an appropriate order on that.

23         MS. TEMPONE:  Yes, yes, Your Honor.  To request to

24  confirm that we -- it's a docket entry that's filed, a request

25  for confirmation, and then the final order will be subsequently

1   entered after that.

2          THE COURT:  Okay, very good.  And then, the last

3   thing is there is pending motion for stay relief which I had

4   not set for hearing yet, pending resolution of the withdrawal

5   of counsel issue.

6          Mr. Sanders, I can hear the motion for stay relief --

7   Mr. Sanders and Mr. Kelly next week.  Or if you want, if

8   there's a resolution to be agreed to now and nobody objects, I

9   will entertain it now.  Otherwise, I think I would set it for

10  hearing next week.

11         MR. BROOKS:  Judge, there is a resolution.

12         THE COURT:  There is.  All right, Mr. Brooks.

13         MR. BROOKS:  The confirmation order grants all

14  secured creditors relief from stay, and any kind of motion for

15  relief from stay would be a comfort order.

16         THE COURT:  Okay.

17         MR. BROOKS:  So if you want to grant a comfort order,

18  I don't think there can be an objection to that.  I think that

19  it's in Mr. Sanders's benefit to allow this to go to state

20  court so that the state court attorney can get the title

21  insurance attorney to get in there and Mr. Sanders can ride the

22  back of that of that title insurance attorney.

23         THE COURT:  Okay.  That's very helpful.

24         Mr. Kelly, any objection to submitting an order

25  granting your motion for stay relief?

```
1              MR. KELLY:  No objection, Your Honor.

2              THE COURT:  All right.  Ms. Tempone?

3              MS. TEMPONE:  No, Your Honor.  No objection.

4              THE COURT:  All right.  And, Mr. Sanders, any

5    objection?

6              MR. SANDERS:  No, Your Honor.

7              THE COURT:  Okay.

8              MR. SANDERS:  Mr. Kelly (indiscernible) in the area

9    were built without permission of the Broward County

10   (indiscernible) --

11             THE COURT:  Okay.  Mr. Sanders, you have to stop.

12             MR. SANDERS:  Okay.  I'm sorry.

13             THE COURT:  That's not for this court, okay.

14             All right.  So, Mr. Kelly, you can give me --

15             MR. SANDERS:  Sorry.

16             THE COURT:  -- you can give me an order on your

17   motion for stay relief granting it.  Okay?

18             MR. KELLY:  Okay.  And we'll reference today's

19   hearing --

20             THE COURT:  Yes, please.  Okay.

21             MR. KELLY:  -- in that order.  Thank you.

22             THE COURT:  All right.  So I think that's everything

23   in this case.

24             Mr. Sanders, I wish you luck.  This sounds like a

25   very complicated issue.  I'm sorry, I'm not the right court to
```

1   resolve it.  I wish you luck in trying to resolve it in the

2   state courts.

3          And, Mr. Brooks, I frankly can't thank you enough for

4   jumping in here and trying your best to help Mr. Sanders and

5   sort out this really unfortunate mess.  And so I thank you for

6   your contribution here.

7          And, Mr. Sanders, I hope you find counsel to help you

8   in the state court and you can proceed forward.  Okay?

9          So that concludes the <u>Sanders</u> hearing.

10      (Proceedings concluded.)

11

12

13                **C E R T I F I C A T I O N**

14

15          I certify that the foregoing is a correct transcript

16   from the official electronic sound recording of the proceedings

17   in the above-entitled matter.

18

19   FEDERALLY CERTIFIED TRANSCRIPT AUTHENTICATED BY:

20

21

22   *Alicia F. Jarrett*

23   _____

24   ALICIA JARRETT, AAERT NO. 428      DATE: January 30, 2023

25   ACCESS TRANSCRIPTS, LLC